**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Selia Ybarra,<br><br>            Plaintiff,<br><br>v.<br><br>Carolyn W Colvin,<br><br>            Defendant. | No. CV-13-01517-PHX-DGC<br><br>**ORDER** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Selia Ybarra seeks judicial review of the Commissioner's decision finding her not disabled within the meaning of the Social Security Act. Doc. 12. For the reasons that follow, the Court will affirm the Commissioner's decision.

**I.      Background.**

Plaintiff applied for disability and supplemental security insurance benefits on October 6, 2009, alleging disability beginning September 1, 2009. Doc. 12 at 1. After a hearing on August 19, 2011, an administrative law judge ("ALJ") issued an opinion on October 5, 2011 finding Plaintiff not disabled. *Id.* at 2; A.R. 13-24. A request for review was denied by the Appeals Council and the ALJ's opinion became the Commissioner's final decision. Doc. 12 at 2.

**II.     Legal Standard.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

Determining whether a claimant is disabled involves a sequential five-step evaluation. The claimant must show (1) he is not currently engaged in substantial gainful employment, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work. If at any step the Commissioner determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five. If the claimant establishes his burden through step four, the Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

**III. Analysis.**

Plaintiff advances three arguments as to why the ALJ's decision was erroneous. First, she argues that the ALJ failed to properly characterize Plaintiff's cervical degenerative disc disease and missed the Plaintiff's lumbar degenerative disc disease, rotator cuff degeneration, carpal tunnel syndrome, and short term memory loss. Doc. 12 at 11. Second, Plaintiff contends that the ALJ failed to obtain testimony from a vocational expert. *Id.* at 13. Third, Plaintiff argues that the ALJ mischaracterized her testimony. *Id.* at 15. The Court will consider each argument in turn.

**A.   Residual Functional Capacity Assessment.**

Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment

1 was incomplete because the ALJ failed to properly characterize some of her alleged
2 impairments.  Doc. 12 at 11.  Plaintiff points to specific evidence that she contends is
3 contrary to the ALJ's RFC assessment.  For example, she cites a consultative exam by
4 Dr. Chaffee, which she alleges "showed evidence of carpal tunnel syndrome with a
5 positive Tinel's sign and a diminished pinprick sensation over her right thumb and
6 second and third fingers."  *Id.* (citing A.R. 346).  In the cited document, however, Dr.
7 Chaffee clearly noted that he did not believe that Plaintiff had any conditions that would
8 impose any limitations for 12 continuous months.  A.R. 346.

9 Plaintiff argues that she suffers from significant degenerative disc disease which
10 the ALJ erroneously characterized as "occasional neck stiffness."  Doc. 12 at 11.  As
11 support, she cites MRI results from October 2002 (A.R. 227), which is well outside the
12 relevant time period at issue (September 1, 2009 through August 19, 2011).  She also
13 cites a 2011 x-ray report which showed "mild degenerative disc disease" and "moderate
14 diffuse osteoarthritis."  Doc. 12 at 12.  This report, however, was considered and cited by
15 the ALJ in his opinion.  A.R. 20.  The ALJ noted that "the objective medical evidence
16 reveals only mild degenerative disc disease" (*id.*), that there was "no evidence in the
17 record of bulging discs" (*id.*), that Plaintiff reported only "occasional neck stiffness" at an
18 exam in September 2010 (*id.*), and that "the record reflects no actual treatment for the
19 alleged back and neck pain aside from her report to the consultative examiner that she
20 takes Tylenol for pain . . . and her primary care provider's instruction to lose weight"
21 (*id.*).  Plaintiff cites no evidence in the record that is inconsistent with this determination.
22 That Plaintiff disagrees with the ALJ's assessment, without more, does not constitute
23 legal error.

24 Plaintiff cites a March 2009 x-ray showing that "she had rotator cuff
25 degeneration" (A.R. 293) and an October 2010 evaluation wherein she was diagnosed
26 with "bilateral mild acromioclavicular joint degenerative joint disease" (*id.* at 454).  She
27 states that the ALJ "made no reference to [her] rotator cuff in his decision."  Doc. 12 at
28 12.  Plaintiff ignores, however, that the March 2009 x-ray results refer to the rotator cuff

irregularity as "mild" and state that Plaintiff's shoulder is "stable since the previous study of 2008[.]"  A.R. 293.  Plaintiff also does not explain why these documents are inconsistent with the ALJ's RFC assessment.  The Court therefore cannot conclude that the ALJ committed legal error by not explicitly discussing these reports in his opinion.

Plaintiff argues that the ALJ erred by failing to mention the opinions of two examining doctors, Drs. Bradley and Steingard.  Doc. 12 at 13.  She cites *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012), for the proposition that an ALJ must provide clear and convincing reasons to reject an examining physician's opinion.  *Id.*  Although Plaintiff cites a valid standard, nothing in the record indicates that the ALJ rejected the opinions of Drs. Steingard and Bradley.  Moreover, their opinions appear to be consistent with the ALJ's conclusions.  Dr. Bradley opined that Plaintiff was "limited to simple tasks" and limited to work without any public contact and with minimal interaction with peers.  A.R. 366.  He further opined that there were no limitations for work in a low stress environment with minimal interaction with peers.  *Id.*  Dr. Steingard found that Plaintiff would need to have some instructions repeated at work, that she was able to maintain concentration over the course of the interview, that she would be sensitive to criticism at work, that her interaction was impaired but not precluded, and that she can perform simple and repetitive tasks but that she was unlikely to be successful with more complex tasks.  *Id.* at 341.  These opinions are consistent with the ALJ's finding that Plaintiff is capable of light, unskilled work.  *Id.* at 23.

An RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  SSR 96-8P.  In cases where symptoms such as pain are alleged, the assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence" and "include a resolution of any inconsistencies in the evidence as a whole[.]" *Id.*

The Court finds that the ALJ has fulfilled these requirements.  In supporting his determination, he noted that the record "shows no treatment records after the alleged

1 disability onset date until February 4, 2010 when the claimant was seen in CIGNA
2 Urgent Care for acute bronchitis, which is unrelated to the alleged disability impairments
3 and itself not causing limitations for 12 continuous months[.]" A.R. at 19.  He further
4 notes that Plaintiff's primary care provider "noted that [Plaintiff]'s depression was well-
5 controlled" in December 2010 (*id.*); that Plaintiff reported feeling the same in April 2011
6 (*id.* at 20); that the first complaint of back pain is on April 21, 2011, and that Plaintiff's
7 primary care provider concluded on August 25, 2011 that she had "stable lumbar and
8 cervical degenerative disc disease [][and] she was to continue to work on weight loss"
9 (*id.*); that her fibromyalgia diagnosis was not supported by the physical examination and
10 was not diagnosed by a rheumatologist (*id.*); that there was "no evidence in the record of
11 bulging discs" (*id.*), that Plaintiff reported only "occasional neck stiffness" at an exam in
12 September 2010 (*id.*), that "the record reflects no actual treatment for the alleged back
13 and neck pain aside from her report to the consultative examiner that she takes Tylenol
14 for pain . . . and her primary care provider's instruction to lose weight" (*id.*); that Plaintiff
15 gave inconsistent reasons as to why she stopped working (*id.* at 20-21); and that Plaintiff
16 "described daily activities which are not limited to the extent one would expect given the
17 complaints of disabling symptoms and limitations" (*id.* at 21).  As noted above, Plaintiff
18 has not identified any evidence inconsistent with this assessment.  The Court accordingly
19 does not find legal error associated with the RFC assessment and concludes that it is
20 supported by "such relevant evidence as a reasonable mind might accept as adequate to
21 support a conclusion." *See Robbins*, 466 F.3d at 882.

      **B.**    **Vocational Expert.**

23 Plaintiff argues that this "case needed a vocational expert to clarify the issue" of
24 her limitations.  Doc. 12 at 15.  Plaintiff, however, cites no authority to support her
25 assertion that the ALJ should have consulted a vocational expert.

26 An ALJ need not always utilize a vocational expert.  "The Commissioner's need
27 for efficiency justifies use of the [Medical-Vocational Guidelines] at step five where they
28 *completely and accurately* represent a claimant's limitation." *Tackett v. Apfel*, 180 F.3d

1094, 1101 (9th Cir. 1999) (emphasis in original). "The Guidelines present, in *table form*, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Id.* The *Tackett* court noted that "significant non-exertional impairments . . . may make reliance on the [Guidelines] inappropriate," and that "[w]e have also held that pain can be a non-exertional limitation." *Id.* at 1101-02 (citing *Derosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)).

Here, the ALJ found that Plaintiff's "additional limitations have little or no effect on the occupational base of light unskilled work." A.R. 23. Plaintiff relies solely on the opinion of Dr. Bradley to dispute this finding. Doc. 12 at 15, Doc. 14 at 7. As noted above, however, Dr. Bradley found that Plaintiff was "limited to simple tasks," limited to work without any public contact and with minimal interaction with peers, and had no limitations for work in a low stress environment with minimal interaction with peers. A.R. 366. The ALJ discussed that "the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work settings; and to deal with changes in a routine work setting." *Id.* at 23 (citing SSR 85-15). He further noted that "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." *Id.* (citing SSR 85-15). Neither Dr. Bradley nor any other physician concluded that Plaintiff did not have the ability to meet these basic work related activities. The Court cannot conclude that the ALJ committed legal error by relying on the Guidelines and declining to consult a vocational expert.

### C.     Plaintiff's Testimony.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged with no evidence of malingering, and (2) reject the claimant's testimony about the

severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

At the first step, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. A.R. 18. At the second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms not credible to the extent they were inconsistent with his RFC assessment. *Id.* at 18-19. The Court finds that the ALJ gave specific, clear, and convincing reasons for finding Plaintiff's testimony not credible. He noted that the record "shows no treatment records after the alleged disability onset date until February 4, 2010 when the claimant was seen in CIGNA Urgent Care for acute bronchitis, which is unrelated to the alleged disability impairments and itself not causing limitations for 12 continuous months[.]" *Id.* at 19. The ALJ further noted (1) that Plaintiff's primary care provider said on December 17, 2010 that her "depression was well-controlled"; (2) that "her therapist noted 'marked improvement. Nearly complete remission of most symptoms" in March 2011; (3) that Plaintiff reported to her primary care provider on April 21, 2011 that her depression was well-controlled; (4) that Plaintiff's diagnosis of fibromyalgia was not supported by her physical exam and not diagnosed by a rheumatologist; (5) that there was "simply no evidence in the record of bulging discs"; (6) that there was evidence in the record that the Plaintiff "stopped working for reasons not related to the allegedly disabling impairments"; (7) that Plaintiff went on vacation in March 2011; and (8) that Plaintiff "described daily activities which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." *Id.* at 19-21. The ALJ's reasons for rejecting Plaintiff's subjective testimony are sufficient to meet the standard required by the Ninth Circuit. *See Vasquez*, 572 F.3d at 591.

1    **IT IS ORDERED** that the Commissioner's final decision is **affirmed**.  The Clerk
2 shall **enter judgment** accordingly and **terminate** this case.
3    Dated this 21st day of March, 2014.

*David G. Campbell*
United States District Judge